CHARLES T. MILLER *vs.* ST. PAUL CITY RAILWAY COMPANY.

## February 7, 1890.

**Street Railway — Personal Injury — Contributory Negligence.** — Two parallel street-car tracks were so near together that cars going in opposite directions would pass within two feet of each other. The cars were operated by steam-power, (cable-cars.) *Held* negligence for one, after dark, to deliberately stand between the tracks, wait for and attempt to take passage on cars coming on one track, at the same time paying no attention to see whether cars were approaching within dangerous proximity on the other track.

Appeal by defendant from an order of the district court for Ramsey county, *Kerr*, J., presiding, refusing a new trial after a verdict of $2,500 for plaintiff.

*H. J. Horn,* for appellant.

*Erwin & Wellington* and *M. D. Munn,* for respondent.

DICKINSON, J.     This is an appeal by the defendant from an order refusing a new trial.     The action is for the recovery of damages for injuries received by the plaintiff in April, 1888, while attempting to get upon one of the defendant's street-cars, to be carried as a passenger.     The cause of action relied upon is the negligence of the defendant in the operation of its cars running upon another track, and in the opposite direction from that in which the car was going upon which plaintiff attempted to take passage.     The defendant, putting in issue the allegation of its negligence, also alleges in its defence that the plaintiff was guilty of contributory negligence.     The following statement of facts will be sufficient for the purposes of this decision:     This is a cable-car line, the cars being operated by a cable propelled by steam-power, and to which the cars are attached by what is called the *"grip,"* managed by a lever in the forward or *grip*-car. · This is also supplied with a brake.     This mechanism is in charge of a man known as the "gripman."     Another car is run in the rear of the grip-car.     In the night a head-light of strong power is carried at the forward end of the grip-car.     This is much brighter than the street lights, and is readily distinguishable from

them. At the place of the accident the cable tracks run east and west along the central part of Selby avenue, which near this point crosses Western avenue at right angles. There are two tracks, the south track being used for trains going east, and the north track for trains going west. These tracks are a little less than five feet apart. The cars project outside of the rails some eighteen inches, so that when cars are passing each other on the two tracks there would be a little less than two feet of space between them. The streets at the place of the accident were unpaved, and were very muddy on both the north and south sides of the car tracks; but the space between the two car-line tracks had been paved. For some time before this, as the evidence went to show, passengers had to some extent used this paved middle space, both in embarking upon the cars and in getting off them. The rear coach was, however, provided with gates on its platforms, closed on the inner side, —the side next the opposite track,—so that passengers could not well enter or disembark on that side. The grip-car, which was also used for passengers, was open, and equally accessible on either side. The accident occurred in the evening, after it had become dark. The plaintiff came to Selby avenue at the western side of the crossing of Western, for the purpose of taking the cars going east. Because of the exceedingly muddy condition of the street, he crossed to the paved space between the tracks, and walked east, a little past the eastern limit of Western avenue, and there waited for his approaching train, which he signalled to stop. Another man stood at his side, between the tracks, and just east of him. Other passengers were waiting for the train on the south side of the track. Just as that train was coming to a stop, or just as it had stopped, and as the plaintiff was in the act of getting on the grip-car, he was struck by a car going west on the other (north) track, and from this resulted the injuries complained of. The evidence shows conclusively that the gripman operating the west-bound train saw the plaintiff and the other man standing between the tracks, while he was still nearly a block away, and understood that they were there for the purpose of getting on the east-bound train, and he himself testified that he knew they were in a dangerous place. He saw also

the east-bound train as it came to that point, and came to a stop to receive these passengers. Yet his own testimony is to the effect that, running at full speed, he did not attempt to stop until the head-light on his car was about opposite that of the other train, and when, according to other evidence, his car must have been not far from 10 feet from the plaintiff. There is other evidence tending to show that there was no attempt to stop the train until it struck the plaintiff. The plaintiff on the trial expressly renounced any claim that the injury was wilfully or wantonly inflicted.

Upon the facts of the case, the defendant's claim that no case of negligence on its part was shown, cannot be sustained. Upon that issue there was a case proper for the determination of the jury. But the question is presented whether the undisputed facts do not show that the plaintiff was guilty of contributory negligence. Some further reference should be made to the facts bearing upon this issue. The plaintiff was acquainted with the situation, and must be deemed to have known that a train might be expected on the north track, going west, at any time. He must have known, too, that as the car he was to take should come to where he was standing, and while it was coming to a stop, and until he could get on it, it would obstruct any attempt that might be necessary to get out of the way of a car passing on the other track. He must have known that to occupy such a position, at least that to do so without watching for any car which might be approaching on the north track, involved danger to himself, unless the very fact of his obvious danger could be implicitly relied upon as being sure to cause the manager of the west-bound train to stop his cars to enable the plaintiff to safely accomplish his purpose of boarding the other train from where he was standing between the tracks. We cannot regard the plaintiff as being justified in so far relying upon that being done as to exercise no watchfulness himself. Yet it must be considered as conclusively shown by the plaintiff's own testimony that he gave no heed to the approaching train by which he was injured. He says: "I don't remember having seen the train. I'm quite sure not to have seen it close by, if I saw it at all. I did not see that car until it was within a few feet, going at a rapid rate of speed." There was nothing to prevent him

from seeing it. While standing waiting for the car he was to take, he had but to turn his head a little to see the bright head-light of the other train. No sudden emergency is shown to have arisen to affect the plaintiff's conduct or to distract his attention; no occasion for hasty or thoughtless action. That the plaintiff deliberately placed himself in a position which would subject him to the danger of serious injury, unless he should guard himself by watchfulness, is, we think, so apparent that a contrary conclusion would be unreasonable. That he did not pay any attention to the approach of this danger is conclusively shown. It is equally certain that if he had done so he would have seen it in time to have avoided it. Under these circumstances, the conclusion that the plaintiff appears to have been guilty of contributory negligence cannot, upon the facts as they now appear, be avoided. This is a clearer case in favor of the defendant upon this issue than was that of *Reed* v. *Minneapolis Street Ry. Co.*, 34 Minn. 557, (27 N. W. Rep. 77.) The verdict cannot be sustained, and the order refusing a new trial is reversed.